UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY MARANO COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16-cv-02051 |
| vs. ) | |
| ) | Judge: Samuel Der-Yeghiayan |
| JOE CAPUTO & SONS, INC. a/t/a JOE ) | |
| CAPUTO #1 a/t/a JOE CAPUTO #1 – DES ) | Magistrate Judge: Jeffrey T. Gilbert |
| PLAINES, *et al.* ) | |
| ) | |
| Defendants. ) | |

**ORDER**
**EXTENDING AND MODIFYING TEMPORARY RESTRAINING ORDER**

This matter is before the Court upon Plaintiff's Motion To Extend and Modify Temporary Restraining Order (where indicated "Plaintiff's Motion") [Dkt. No. 51]. After careful consideration of the record, it is,

**ORDERED** that the Plaintiff's Motion To Extend and Modify Temporary Restraining Order [Dkt. No. 51] is GRANTED, and it is further,

**ORDERED** that the Temporary Restraining Order [Dkt. No. 16] is hereby modified to allow the sale of the assets (collectively the "Assets") of Joe Caputo and Sons, Inc., Joe Caputo and Sons Produce-Palatine, Inc., Joe Caputo and Sons-Algonquin, Inc., Randall Partners, LLC, Foxfire Partners, LLC, and Oaks SC Partners, LLC (collectively the "Sellers") as follows:

a. The auction procedures set forth in the Plaintiff's Motion constitute the best manner in which to sell the Assets to maximize value for all parties and to generate the highest and best prices for the Assets given the potential local, regional and national interest in the Assets.

b. Murray Wise Associates, LLC ("MWA") and Paine Wetzel Associates, Inc. ("PW") (collectively "MWA/PW") have scheduled the sale of the Assets at public auction (the "Auction") for May 12, 2016 at 10:00 a.m. MWA/PW are authorized to conduct the Auction according to the methodology described in Plaintiff's Motion and this Order.

c. The sale of the Assets is subject to further order of the Court following the Auction Confirmation hearing as defined herein.

d. With respect to the Auction procedures, the Court approves the following:

i. <u>Stalking Horse Bidder(s)</u>. The Sellers, MWA/PW, and Robert Marcus, Esq., Plaintiff's counsel, not individually but in his capacity as Trustee ("Trustee"), (collectively the "Parties") are authorized to continue soliciting stalking horse bids for the Auction. The Parties may, with the consent of MB Financial Bank, N.A. and the PACA claimants, and without further Order of Court, select one or more stalking horse bidders for the Assets and offer such stalking horse bidder(s) buyer protection in the form of a break-up fee up to 2% of the amount of such bidder(s) bid. The Trustee is authorized to execute any documents required to effectuate such a bid.

ii. <u>Credit Bidding</u>. All rights to credit bidding shall be preserved as permitted by law. MB Financial Bank, N.A. and the PACA claimants wishing to credit bid must place their bids in accordance with the bidding procedures established by MWA/PW, including the requirement that all credit bidders register prior to placing bids. In the event a secured creditor is the highest bidder for any Asset(s) at closing such creditor shall be required to pay MWA/PW the Transaction Fee pursuant to their engagement unless agreed otherwise by MWA/PW.

        iii.      <u>Prevailing Bidder</u>.    Upon conclusion of the Auction sale, the Trustee shall designate the highest or best bidder for any Asset, combination of Assets, or all the Assets which results in the greatest overall price (the "Prevailing Bidder"), and such Prevailing Bidder(s) and purchase price(s) shall be approved at the Auction Confirmation Hearing (as defined below). Each Prevailing Bidder shall execute a written asset purchase agreement specifying the purchase price, the Asset(s) purchased, and a closing date within thirty (30) days following Court approval (the "Asset Purchase Agreement"). The Trustee is authorized to execute any Asset Purchase Agreement for the Sellers. Any objection to the designation of the Prevailing Bidder(s) shall be filed no later than 5:00 p.m. Central time, two (2) business days prior to the Auction Confirmation Hearing and shall be decided by this Court.

        iv.      <u>Back-Up Bidder</u>.    With regard to the sale of Assets, the Trustee may also designate the next highest bidder or otherwise best bidder(s) that results in the next overall highest price for the Asset(s) after the Prevailing Bidder to serve as the Back-Up Bidder (the "Back-Up Bidder"). If the Prevailing Bidder for the Asset(s) fails to close within two (2) business days of its closing date or any extension thereto, the Back-Up Bidder, if selected, shall have the opportunity to close at its last highest bid price within thirty (30) days and so forth until sales of the Asset(s) have been closed. Upon the time it is determined that a Back-Up Bidder(s) has become the new Prevailing Bidder(s), the Back-Up Bidder(s) shall be required to sign an Asset Purchase Agreement and post its deposit. The Trustee is authorized to sign the Asset Purchase Agreement on behalf of all Sellers.

        v.      <u>Auction Confirmation Hearing</u>.    Following the conclusion of Auctions for the Assets, and upon receipt of a fully executed Asset Purchase Agreement and the deposit, the Trustee shall file a Report of Sale indicating (a) the result of the Auction(s) of the

Assets, including the identities of the Prevailing Bidder(s), (b) the amount of the winning bid(s), and (c) the Assets subject to such bid(s). The Trustee shall also file copies of the Asset Purchase Agreements executed by the Prevailing Bidders. The Court shall conduct a hearing on **May 19, 2016 at 9:00 a.m.** (the "Auction Confirmation Hearing") to consider final approval of the sale of Assets and the Asset Purchase Agreements. Any objection to the Report of Sale, any Asset Purchase Agreement or the final approval of the sale of any Asset, shall be in writing and shall be filed with the Court no later than 5:00 p.m. Central time, two (2) business days prior to the Auction Confirmation Hearing, and must specify the basis for the objection. Upon approval of the sales at the Auction Confirmation Hearing, the trustee is authorized to execute any and all document(s) necessary to effectuate and close any and all sales of the Asset(s).

      vi.    <u>Extension(s) of Closing Date</u>. The Trustee shall be authorized to grant any extension of time of the closing dates established by the Asset Purchase Agreement(s) at his discretion. MB Financial Bank, N.A. and the PACA claimants shall retain their right to object to such extension of time for cause.

      vii.    <u>Day of Sale</u>.   On the day of sale, MWA/PW shall announce the terms and conditions of the sale. The terms and conditions announced at the sale shall control; provided, however, that the terms and conditions announced at the sale shall not conflict with this Order.

    e.    All sales of Assets shall be free and clear of all liens, claims and encumbrances ("Encumbrances") but in all other respects shall be "AS IS/WHERE IS " without representation, recourse or warranty of any kind.

    f.    Net proceeds of the sale of the Asset(s) shall be held in an escrow/trust account of the title company, the Trustee, or with the Clerk of Court with all such Encumbrances attaching to the proceeds of the sales with the same validity, priority and extent as existed on the Assets as

of the closing, and shall be distributed to the holders of valid and enforceable liens upon the particular Asset sold in accordance with further order of this Court. The Trustee shall file a Motion for Distribution and Report of Sale (the "Distribution Motion") setting forth the sales price of each Asset sold and the proposed distribution of such sales proceeds for each Asset. In the event the Distribution Motion is approved prior to closing, funds will be distributed from the proceeds in accordance with any distribution order. In the event the Distribution Motion is not approved prior to closing, the funds shall be distributed only after such an order is entered. Notwithstanding the foregoing, the Trustee shall be authorized to distribute from the closing proceeds, at the time of closing, the MWA/PW transaction fee(s) and expense reimbursement(s), any reasonable and ordinary closing costs typically paid by the seller at closing, any taxes or other amounts due and payable that attach to real property as a priority to perfected liens by operation of law, any payments due pursuant to the terms of the Asset Purchase Agreement, and any amounts further authorized by order of this Court. If and to the extent that the Trustee may be required to pay any documentary or transfer tax at closing, such taxes shall be paid from the gross proceeds of the sales.

  g. Any forfeited deposits shall be treated as proceeds of the Asset(s) on account of which the forfeited deposits were furnished, and shall be subject to claims of holders of liens covering said Asset(s). The proposed distribution of any forfeited deposits may be included in the Distribution Motion described above or in a separate motion.

  h. The rights of all parties to assert objections to the distributions of the sales proceeds based on the validity, priority and the extent of any lien, or equitable theories shall be preserved and may be asserted in response to any Distribution Motion that is filed.

      i.      The Trustee shall have the authority to execute any document(s) necessary and related to the Auction and the Sellers' Assets.

**SO ORDERED**
This the 20th day of April, 2016

_____
Samuel Der-Yeghiayan
United States District Judge